## GARY v. FROST & DICKERSON, ET AL.

1. Where several writs of *fi. fa.* come to a sheriff's hands on the same day, and he commits a default in not making the money when, by the use of due diligence he could have made a portion, but not all the aggregate sum of the executions, he cannot defend at law the rule of each of the parties against him for his negligence, because the value of the property omitted to be seized and sold, is more than the sum of any one of the *fi. fa's;* but after judgment by all the creditors against him and sureties, he may enjoin in equity, and that court will ascertain the value of the entire property omitted to be sold, not less however than ascertained by the largest judgment at law, and divide that *pro rata*, between the several creditors having thus obtained judgments.

Writ of Error to the Court of Chancery for the third District.

THIS bill is filed by Gary against Frost and Dickerson and five other defendants, and the case made by it is as follows, to wit:

Gary, the complainant, in the year 1842, was the sheriff of Sumter county. On the 16th of March of that year, he received six writs of *fi. fa.; that is* one in favor of each of the defendants against the goods, *&c.* of J. D. Bain, J. A. Smith, T. L. Beville, and C. Davis, all of which, on the 3d and 23d of June, were levied upon the same property, which being sold, produced only a partial satisfaction; afterwards, on the return of the executions, the defendants severally suggested to the court from which the executions issued, that the she-

riff by the use of due diligence, could have made the money; and, the fact being contested, an issue was formed, on which a verdict was returned against the sheriff in each suit, and judgment thereon was given against him and his sureties, for the full amount of the particular *fi. fa.* interest and costs, with ten per cent. damages thereon.

The recovery on the motion of Frost & Dickerson, was for the sum of $762 03, with ten per cent. damages thereon, besides $42 75, the costs of that *fi. fa.* All the other judgments were for smaller sums.

The complainant asserts that the evidence submitted in each instance to the jury, was substantially the same, and that the value of the property proved to be subject to the *fi. fa's* was not more than $350 of one of the defendants to the execution, and $200 as to one other. Under these circumstances, and inasmuch as the entire value of the property, in respect to which he was in default did not amount, to the sum of all the *fi. fa's* and as whatever sum could have been made would be divisible *pro rata* to each *fi. fa.* the complainant prays that it may be ascertained what was the value of the property on which the issues were determined, and after a division of that amount, to the several defendants, that they be enjoined from collecting the remainder of their judgments from the sheriff and his sureties.

The defendants moved to dismiss the bill, as containing no equity, and the chancellor being of that opinion, decreed accordingly.

This decree is assigned as error.

INGE, for the plaintiff in error, cited Gary v. Hathaway, 6 Ala. Rep. 161, and relied on the intimation there given. He also cited 1 Story's Eq. 25 to 32; 2 Ib. 544, 547, 555.

R. H. SMITH, contra, insisted—

1. That Gary cannot set up his neglect of the several rights of the execution creditors against them jointly. No levy being made, he became liable to each severally, and each had the right to proceed for his neglect in making the money from property unappropriated by any other creditor. [Bell v. King, 8 Porter, 147.]

2. A court of equity will not relieve against a liability arising from the sheriff's neglect. [Chandler v. Crawford, 7 Ala. R. 507.]

3. But if the court has jurisdiction, there is no allegation that the defendants in execution had not sufficient property to satisfy all the *fi. fa's;* and the money to be distributed should have been paid into court, as the bill, if allowed is in the nature of an interpleader. The exhibits show, the jury considered the property of more value than alledged, as one of the recoveries is for more than $800.

GOLDTHWAITE, J.—In order to determine whether there is or is not a case for equitable relief made by this bill, it is necessary to ascertain, so far as we can, the intention of the Legislature in giving the summary remedy against sheriffs for omitting to make money on executions when that can be made by the use of due diligence. [Digest, 218, § 85.]

There are no terms used from which it can be inferred the recovery is given as a mere penalty, although the injured party is allowed 10 per cent. on the amount of his execution in that aspect. The words of the enactment seem to give the remedy only when the neglect has extended to the whole sum of the execution, yet it has always been construed to warrant a recovery equivalent to the actual injury sustained, even when the property omitted to be seized or sold was of less value than called for by the execution. [Gary v. Hathaway, 6 Ala. Rep. 161.] This construction would seem to indicate that the remedy is, in most, if not in all respects given as a substitute for the action of debt on the official bond. But if we may assume this to be the correct exposition, it advances us but little in the present inquiry, as there is much intrinsic difficulty arising out of the complication of interests when several execution creditors are pursuing the sheriff for the same neglect, which operates as a common injury to all. The difficulty was felt in Bell v. King, 8 Porter, 147, where we held the sheriff was not excused from negligence in relation to a junior execution, for the reason that he at the same time had other senior executions sufficient to exhaust the whole property of the debtor. But certainly there is no prin-

ciple of the common law which will prevent the sheriff from mitigating the damages in a suit for neglect by showing that he has already been made liable, and has satisfied others entitled to a priority of satisfaction out of the property. To hold the contrary, would be a harsh and severe rule, giving to the junior creditor a compensation for the neglect which he never could have reached, if the utmost diligence had been pursued. We speak not now of the consequences which might arise if the junior creditor, should after the first default, take out a new execution. It is possible, that by this he might obtain the right of prior satisfaction, against the same goods of the debtor, inasmuch as the property would remain unchanged; but that is not this case, and therefore it is unnecessary now to say what would, in that event, be the relative rights and duties of the parties and officer. In the present case, all the creditors were entitled to a *pro rata* division of the money produced from the sale of the debtor's property, and if the sheriff is not responsible to each of the creditors, as for a penalty, in our judgment he can only be liable to the whole number, for the value of the property omitted to be sold, although he may be unable, from his peculiar condition, to defend the rule against any one successfully. The case of Chandler v. Crawford, 7 Ala. R. 507, relied on by the defendant's counsel, was based upon the default in not returning an execution, in which the recovery is allowed as a mere penalty. It has for this reason no application to the present case. As the sheriff was in a condition in which he could not defend the suit of any one of the creditors, it follows, as all their judgments are based on the same neglect, and because he can be made liable only to the extent of the property, that he is entitled to relief.

2. But in ascertaining the extent of the relief, the facts ascertained already, by the judgments against him, cannot be disturbed. Thus it appears, the creditors, Frost & Dickerson, have obtained a judgment for something over $800, which could not have been unless the jury considered the sheriff as responsible for property to that amount. As an account will be necessary in the court below, this judgment will be assumed as ascertaining the true value, unless the creditors shall elect to go into an examination of that matter anew, in such manner as the chancellor shall direct.

In reference to the allegations of the bill, we think they are substantially good, and it is not the course of practice in this State, to bring money into court; but conceding there are cases in which it would yet be proper to deposit the fund in court, we think the one before us is not of that description, as the parties between whom the fund is divisible, have already judgments for a larger sum than can be equitably coming to them, if the allegations of the bill are true.

On the whole, we think there is a substantial equity disclosed by the bill; the decree of the chancellor is therefore reversed and the cause remanded for further proceedings, not inconsistent with this opinion.